Mary, if you could call the next case, please. Case number 15, GANS 1557, Soskin & Associates v. Brutal Toys. Do you have a pallet? I think I stopped it. Could you check first, please? Thank you. Good morning, Your Honor. Thomas Crooks on behalf of the appellant. Good morning, Your Honor. Mark Evans on behalf of the appellees and cross-appellants, Edward and Cynthia Bicoy. And Corazion Winston on behalf of the appellees, Rudolph and Annette. Okay. Now, have you had an opportunity to speak in terms of your arguments? Actually, we've not discussed sort of dividing our time. Okay. All right. Well, 15 minutes apiece. Do you want to divide it up? We will take five minutes. They have sort of more issues than we do. Okay. So ten and five? That's fine. And, Your Honor, as we're also cross-appellants, if necessary, may I have a few minutes reserved for rebuttal if the cross-appeal comes up on this? Sure. Okay. Thanks, Your Honor. Any objections? No, Your Honor. Okay. All right. Thank you very much. Okay. Ready to proceed? Yes. November of 2004, the Bicoys, who are defendants in this case, came into Mr. Soskin's office and entered into a retainer agreement for his legal services relevant to an estate that was being opened due to the death of a family member. The retainer agreement was not written narrowly. Although it covered the estate matters, it said it further matters as may be necessary or requested from time to time in connection therewith or otherwise. So it covered anything that came up the parties wanted him to handle. Sometime after that, Rudolph and Edward Bicoy, Mr. Soskin's clients, were made co-administrators with their brother, Alvero. And that went fine for a while, and then shortly thereafter, as envisioned by the probate judge, there started these disputes amongst the three administrators. From our perspective, it was Alvero who was filing frivolous motions and frivolous pleadings, making frivolous objections that had to be responded to. Eventually, the estate was changed from an unsupervised estate to a supervised estate. And the key difference that made was that everyone, Mr. Soskin and any lawyers, had to file fee petitions and have their fees approved as opposed to just getting paid. Up until that point, Mr. Soskin had been paid for his services as they were rendered by checks signed by Rudolph and Edward Bicoy. You know, we've read all of this. You know, I think the issue here, and you have limited time, is one of race judicata. I'll go right to that, Your Honor. I mean, that's what this is all about. And here's why race judicata does not apply from our perspective. First, there's no identity of parties. We have a guarantee that was signed by the wives of the two Bicoys that were co-administrators. Those fees could not be collected from them in the probate proceeding, but they had a guarantee that they had signed to guarantee those fees. So there's a difference between what could be done in the probate court and what could be done in a contract action. More importantly, there was not identity of causes of action. These two events were not the same transaction. And that is based on the fact that the probate court denies fees because the bills were not with the specificity required by the Kaiser case. I have a question about the probate order. Sure. There's an argument that's raised that the probate order lacks the term reasonable, and therefore that's part of the reason why there isn't race judicata. Could you address that? Yes. The decision by Judge Fine in the underlying contract case, if you read it clearly, he assumed that the probate judge made a finding that some of Mr. Soskin's fees were unreasonable. Not so. And it's not just that the words reasonable and unreasonable don't appear in the opinion. He really doesn't say anything in there, even implying that what Mr. Soskin did was unreasonable. He acknowledged that Mr. Soskin's work benefited the state enormously. What he denied, he denied because of Kaiser. And some of those bills had been made at a time when it was an unsupervised estate and Kaiser wasn't an issue. He also denied some of the fees because it didn't benefit the estate. Now, I can clearly see why a judge would say, why should these other heirs have their amounts reduced because of fees that went because of this infighting among the administrators? There's some sense in that. But that doesn't limit Mr. Soskin's right to go and expect payment for his own clients. After all, he was doing their bidding. He was representing them under a written agreement that was written before anybody was an administrator in this case. So that is critical. These fees were not unreasonable. There was no finding they were unreasonable. And the fact is, all the fees, whether denied because it didn't benefit the estate, denied because of Kaiser, all of these fees could be recovered in a contract action. We know from the Wildman case that Kaiser does not apply to fees being sought from your own client. Whenever you're going after fees, don't you have to prove first that the fees are reasonable and then that they're necessary? Absolutely, Judge. And that's a burden that Mr. Soskin will have if this case is remanded in the contract case. He will have to prove that. There's no question about that. But those have not been addressed yet. And they won't be addressed unless this case is remanded. Here's why we think the circuit court went off-rail on this. First of all, their belief, the judge's belief apparently, that counsel's fees have been found unreasonable. They weren't found unreasonable by the probate court. Also, Judge Fines said there was no explanation as to why plaintiffs didn't present the retainer agreement in the fee hearings in the probate court. And the fact was, he attempted to. The judge ruled it irrelevant. And when the underlying fee petitions were appealed, the court of appeals here in the First District said the judge was right. The retainer agreement is not relevant in the probate action. But it certainly is relevant in a breach of contract case. The last thing that I think Judge Fine made an error on was that he said, counsel, Mr. Soskin, should have filed a third fee petition. Because there were fees after the remand. There was a hearing. He got a small additional amount. There were fees incurred that were never petitioned to the probate court because the probate judge said, I won't hear any more fee petitions from you. That has to be accepted as true. It's an allegation in the complaint. He couldn't bring it there. So based on the case law, which indicated that you couldn't seek unpaid amounts from your client, Mr. Soskin sought those fees through a breach of contract action, which I think was completely appropriate. How much was involved with those fees that you took? Judge, it's about $90,000. $90,000 that the court refused to hear? That's what was incurred at the time the judge said, I'm not going to hear any more fee petitions. And much of that time was involved. This is an enormous case, Judge. Judge, I'm not interested in what occurred after that. I mean after that. You said that the judge refused to hear any additional fee petitions. After the judge had a hearing after remand, the judge said, I'm not hearing any more fee petitions. And how much fees had incurred after that? That would have been about $90,000. That would have been $90,000? Yes. Yes. Here's the bottom. Let me just say this first. You have to also apply the equitable principle of whether it's a just result. And all of the arguments I've made as to why race judicata shouldn't apply also would apply to whether this was a just result. And we would submit that any time you have a contract that people freely entered into that provides a remedy if they don't pay, and you're not allowed to pursue that remedy because of the fee petitions in the probate court, that there has been an injustice here. The bottom line is under race judicata, it bars litigating questions that have already been litigated, and it bars litigating issues that could have been litigated. Mr. Soskin could never litigate his rights under the retainer agreement and the obligations of the defendants under the retainer agreement. He never was given an opportunity to litigate that and hasn't been litigated to this day. So for those reasons, even if you find that race judicata technically applies, it's our position that it was an unjust result, and he has the right to have his contract action litigated to determine what, if any, additional fees he's owed. So we would ask that the court below be reversed and this be remanded. Thank you. May it please the court. The application of race judicata to this case, I think, could not be more clear, and there are two cases that are very firmly on point that are cited in our brief. It's the Primmell v. Robert Waddington Associates and the Corcoran-Hekala v. Dowdell case. Both cases hold that a fee petition in one case does have a preclusive effect for the purposes of race judicata in a subsequent case. And, in fact, both those cases show that the scope of race judicata can cast a rather wide net. In the Primmell case, the issue of race judicata came not only with the attempt to bring a contract dispute, a breach of contract dispute, about the attorney's fees. That was held to be within the same transaction and barred by race judicata, but also a fraud claim that related to the fees and also a claim for professional legal malpractice. And you can see from the inclusion of legal malpractice and fraud that even though they, on the surface, do not seem to be the same as an attorney fee dispute or a fee petition, just because they're part of the same transaction under that transactional test, those things are also precluded by race judicata. And I want to bring that back to the facts of our case. Counsel has made an attempt to argue that he could not have brought this breach of contract claim in the underlying probate case. And there's really no support for that either in the record or in law. And counsel did point out that it's an allegation in the complaint. It's paragraph 21 in the complaint. Soskin alleges that the probate judge, and I believe the exact words are, made it very clear that he would not entertain another fee petition. However, there's no order. Counsel does not allege that there's an order. And there's certainly no order in the record in which the ability to bring a fee petition, a subsequent fee petition, is barred. Furthermore, the ability of Mr. Soskin to bring that fee petition is in no way precluded by law. The probate court, as all the courts in this jurisdiction, the courts of general jurisdiction, any claim can be brought along with the underlying claim and the court can hear any claim. So just because it's a probate court, that does not mean the court can't hear a separate breach of contract claim. I'll ask you the same question, though. With regards to the probate court order, the lack of the term reasonable, is that something that we should just consider as a technicality? Does that have some relevance here? It has some relevance, Your Honor, and reasonableness, I argue in my brief, reasonableness is a necessary inquiry into both the fee petition and the breach of contract case. I'm not saying that that's necessary to hold a res judicata bars this action, but it does show how closely intertwined the two actions are, that actually the same legal analysis is going to be necessary, the reasonableness of the fee petition versus the reasonableness of the breach of contract case. But to go into a little more depth on that point, if you look at the previous decision in Bitroy, if you recall, the fee petition was appealed by Mr. Soskin the first time around, and so that appeal in the state of Bitroy, that's 395-3-262, the court actually goes very deeply into the issue of reasonableness as related to the fee petition. And although that word reasonableness does not appear in the probate court's order, on appeal, the appellate court was very clear that reasonableness is a factor. And I'll just point you to some of the language that appears on page 275 of that decision. And the court stated that the lack of detail required by Kaiser hampered the court's ability to decipher the contents of the fee petition and it arrived at a determination of a reasonable fee. So even though the trial court and the appellate court in Bitroy viewed the fee petition of the rules of Kaiser, reasonableness is still very much a part of that. Is there anything in the record that would show that there was $90,000 in fees that the court refused to hear? Absolutely not, Judge. All we have is the allegation and the complaint. There's not a number attached to that. And I do want to point something out. Well, in answering my question, was there anything that happened where the court said that they would refuse to hear any more fee petitions? The only thing in the entire record is one paragraph in the complaint, that's paragraph 21, in which the plaintiff alleges that the court made it clear, quote, unquote, that it would not hear any more fee petitions. And as I've said before, that's not an order barring future fee petitions. With all due respect to the court, if a trial judge told me that, I would certainly think twice about defying that admonition, but I would not consider myself bound that I could not bar more fee petitions. There's a parallel here to one of the cases that I've cited. It's the River Park case. In that case, the underlying case was in federal court. It was a 1983 action. And the plaintiff subsequently attempted to bring some state court causes of actions, which were held to be precluded by res judicata. And the plaintiff complained that the trial judge in the federal court had told him, don't bring your state court claims here, bring them in state court. And he said, well, now I'm stuck in a catch-22. The federal judge has told me not to bring them here, and now I go to state court and I'm precluded by res judicata. The court disagreed with that analysis and said, res judicata does apply, even though there's this catch-22 that the plaintiff complained of. It was his own fault for not bringing those claims. So the trial judge may say, don't bring them, but unless you bring them, have them dismissed, appeal that decision, take that all the way to the top, you're just sleeping on your own rights to do that. And that's what happened in this case. The judge may have said, I don't want to see any more fee petitions, but that case was the time to bring the fee petitions. And by not doing it, Saskin slept on those rights and lost them. Continuing on, the cases cited in the appellant's brief, none of them are res judicata cases. The best that we can say of them, and this is including the Wildman Herald case, is that they established that a separate cause of action exists under a breach of contract for a retainer agreement. And we really don't dispute that. A fee petition in the Probate Act is one thing. A breach of contract under a retainer agreement is another thing. But going back to the transactional test, they're still part of the same transaction. And none of the cases cited by the appellant are res judicata cases, none of them create an exception to res judicata. So all we've learned from these cases is that there may be two theories of relief under the same group of facts, but they're still precluded by res judicata in the transactional test. And also the rule that's shown in the River Park case, the res judicata precludes not only the claims that were brought, but the claims that could have been brought. And absolutely, this breach of contract claim, the written contract and the unwritten fees could have been brought in that case. One other point, I believe counsel mentioned that this $90,000 accrued after the so-called warning of the trial court. And I don't think that statement holds up to the record. I don't think it makes sense. According to the allegation in the complaint, that warning that was given by the trial judge came after remand of the first BitTorrent appeal. That was all the way back in 2010, about four years after the initial fee petitions were submitted, and about two and a half years after Mr. Saskin had actually withdrawn as the BitTorrent's attorney. So I don't think it's correct that $90,000 of fees accrued two and a half years after he withdrew as the attorney. It certainly shouldn't be the case. If I could, Your Honors, I'd like to turn to the cross appeal for 137 sanctions. And I would like to point out that although this is an abuse of discretion standard, the deferential standard does not prevent this court from independently reviewing the record and finding an abuse of discretion where those facts warrant. And in this case, to look at the trial court's order with respect to the 137 sanctions, it's clear that the court was applying the wrong standard. It's clear from the very beginning, and the first sentence of the order underneath the Rule 137 caption states that the court, while it strongly disagrees with the position on res judicata, the court states it cannot conclude that Saskin did not believe that the complaints were well-rounded in fact in existing law at the time of his filing. While the beliefs of Mr. Saskin is not the correct standard to apply with respect to a Rule 137 sanction, on the weak side of the Schneider v. Schneider case, the parties' honest belief that the case is well-rounded in the law in fact is not enough. So it appears from the trial court's order that they were starting from did the plaintiff have a belief that the complaint was well-rounded in fact. The court's opinion then sort of meanders a bit. It talks about the contract claim might have been granted if it were deemed to be reasonable. This really goes to the merits of the case. It's not relevant. And finally, the court concludes even though the court had previously called the plaintiff's decision to bring this case unconscionable, and I quote that unconscionable, the court concludes that it was not sanctionable. However, that entire argument proceeds from the wrong standard. So we can't look at whether or not there was a belief that it was well-rounded in fact. We have to look at whether an objective standard as to whether this complaint should have been brought. And going back to the merits, the two cases that I've cited in regards to Decada, I think are so strongly on point. Nothing the plaintiff's appellant has been able to cite. How about in radius, say, to Hanley? Have you read that? Yes. If I could have one second to refresh my memory. It says where the court primarily considers whether the trial court's decision was informed based on valid reasoning and following logical from the facts. Yes. Okay. So and that is the correct standard, whether it was informed from valid reasoning. But to have valid reasoning, you have to proceed from the correct standard. And it is clear looking at the trial court's order, the court was starting off from the wrong standard. I mean, can you stand up here and say that this was a frivolous lawsuit? Yes, Your Honor. I believe this was a frivolous lawsuit. This had been rehearsed once before in the trial court in the first vittori, in the fee petition, in the appeal. There's so many statements in that vittori appeal that relate directly to reasonableness, that talk about the many issues with this case. From that case alone, it should have been apparent that this could not be brought a second time, and any attorney who had done any research would understand and would have found the direct precedent about res judicata cases covering fee petitions. There's really no good faith argument that any of the other cases, aside from that brief, create an exception to res judicata that would allow this case to have been brought. Okay. Thank you. May it please the Court. I am not going to rehash everything that my co-counsel said. But with respect to opposition on the appeal, specifically with regard to res judicata, we believe that res judicata applies to this matter, again, because the transactional test has failed. Not only is it the same cause of action redressed to a breach of contract matter, the amount that Attorney Soskin is suing for in the breach of contract action is the exact amount that was denied by the probate court after his fee petitions were considered and then reconsidered on appeal and then still remanded for additional fees. Second, we believe that there is identity of the parties or parties in privity. There's a successive relationship between the executors who were represented by Mr. Soskin and their wives who are now being sued individually, the four of them. They have the same rights in the estate and the same rights in property. And the next thing that counsel mentioned was that there's a personal guarantee attached to the retainer agreement. It's opposition that there is no personal guarantee attached to the retainer agreement and to the extent that it is, the personal guarantee is extinguished when the estate's liability is extinguished. In this particular case. What about the argument that there's no benefit to the estate under the contract dispute? You know, there was a... All of Mr. Soskin's fee petitions, even the chancery matter and the tax matters were all considered by the probate court in deciding whether or not his fees were reasonable under the fee petitions he presented. Those particular matters were not excluded from his fee petitions. So when the estate's liability is extinguished, that of the personal guarantors is also extinguished. So meaning the four parties individually. And then I think that the most important point is the point that relates to public policy, which is whether or not there is an injustice that relates to the granting of... Well, I guess to the granting of the motion to dismiss under res judicata. And it's opposition that absolutely no injustice exists here. With relation to Mr. Soskin. He was paid handsomely for his estate. I mean, from the probate estate for his work in the... For his work on behalf of the Bitsoys and on behalf of Alvaro, the other executor when he represented them. As stated in the trial court's decision, seeking additional fees or more fees that were already found to be unreasonable to the tune of $96,000 after you were already granted over $200,000 in fees is unconscionable and borders on the line of ethics. Mr. Soskin has not had any injustice towards him. And granting the motion under res judicata to deny fees that were already being unreasonable should be affirmed. Thank you. Thank you. I want to address the last statement that counsel made right off the bat. She says Mr. Soskin was paid handsomely. And indeed, we know that that's their position. Because in their brief, on 10 of the 20 pages they filed, on 10 of those pages... Yeah, but that's not an issue before this court. It really is not. And that's my point, is you don't know whether he's been paid handsomely unless you know how much work he did. And so I think that's without any weight. Other counselors talked about the Permol and the Corcoran cases as being examples of why Mr. Soskin couldn't bring the breach of contract cases. Both of those cases involved a contingency fee. There was no issue about how much the lawyer should be paid, but whether he should get his contingency fee. And in the Permol case, amazingly, a lawyer made a referral to another lawyer and had a referral fee coming. The lawyer he referred it to, because he could not get a higher offer than the plaintiff had already gotten on her own, he very, I think, as credit to the legal profession, said, I will not take a fee. The referring lawyer still wanted his referral fee. And sadly, the court said even under those facts, he had a right to that fee. But these cases, Permol and Corcoran, really don't tell us anything about what should have happened here. And it's important here. Counsel said that the judge in the circuit court here did not use the right standard in denying the Rule 137 sanctions. That's absolutely not true. While he may have said many things in his opinion, at the close of his opinion, he said that Mr. Soskin filing that breach of contract action, the arguments he made in support of it, was objectively reasonable. And that's the standard. Objectively reasonable. It bothers me about this case is the fact that you said that the judge would not hear other fees that were incurred, but there's no evidence before us that the judge said that. And because this case... Don't you have an obligation to have a report of proceedings or something to show us that? Judge, because this case was dismissed on a motion to dismiss, because there was no discovery or evidence induced, that allegation for these purposes must be accepted as true. I mean, I know it happened. Counsel knows it happened. It will have to be proven, I would suspect, in the contract action. But for purposes of this appeal, because it was on a motion to dismiss, you must accept that statement. Well, I think what we have to accept is what's in the record. And I think it's the obligation of the appellant to provide an accurate record before us. And the record here comes from the breach of contract action. And his complaint is in that record, so that statement is in that record. There would not be a record here of the Batoi Court, what they did, unless that breach of contract case proceeded. Had it proceeded, evidence would be induced. We'd have a record showing what the evidence was on that issue. We don't have that because it went out on a motion to dismiss. I think, very frankly, that he has met his burden in that regard. And I thought I heard counsel say that Mr. Soskin has no basis, no legal basis for saying that he could bring the action under the written agreement as a separate lawsuit. And clearly the Batoi appeal clearly said he couldn't use that in the probate court, despite what counsel says here. The judge didn't allow it, and the probate court affirmed the judge in that regard. And so the last thought I would like to leave you with is, if you can't use a retainer agreement in a probate court to support your fees, if the judge won't consider it, and we know from the Batoi appeal that he cannot, then what is the purpose of a written retainer agreement? What is the purpose of a guarantee to be signed by the two wives of the two Mr. Batois? You have a right to contract in this country. Mr. Soskin only took the case because he wanted to be guaranteed his fees would be paid, knowing that in a state with a large amount of money and a number of heirs, I believe there were ten, that there likely would be infighting. And he didn't want to be in a position where he would have to be involved in that infighting in order to represent his client's interests, and then would later have his fees not paid by the probate court. He had a right to protect himself with a written agreement, and if this court affirms what happened in the circuit court, then Mr. Soskin is without a remedy, and his retainer agreement and the guarantees signed by two Mrs. Batois are a nullity. They don't exist. And I don't think we should be making decisions that encourage lawyers or disparage lawyers from entering into written agreements with clients, because frankly that's the best way for these things to be handled. If there's no questions, I'm done. Thank you. I want to thank counsels for a well-argued and well-written brief. We'll take it under advisement, and the court will take a short recess while we get the parties on the next case. If I may, I'm going to ask for a moment of rebuttal to the cross-appeal argument. Oh, yeah. All right. And I will keep this brief short because there's just two points I wanted to address. First of all, the statement at the close of the trial order in which, and this relates to the 137 argument, the statement that the trial order does use the word objectively reasonable. My point, though, is that from the very beginning of the trial court's argument, they're applying the wrong standard. So even though there is a conclusion that it's objectively reasonable, having applied the wrong standard, I think that the trial court's decision was an abuse of discretion, and I would ask your honors to reverse that decision. The second point has to do with the BTOI appeal from the original fee petitions, and counsel said that it's clear from that decision that the retainer agreement could not be used or something. That's not a fair reading of that case. What the court did say was that the retainer agreement was not going to be relevant to the fee petition under the Probate Act, and that may be the case. Nonetheless, it may be a separate cause of action, and I've discussed this before, even though it's two different things, two different theories of recovery, two different causes of action, it's still within the same transaction, still barred by res judicata. And one final thing, your honors, I did ask. You did say two. I'm sorry. Two and a half. Just as I did also in my cross-appeal request for 375 sanctions, it's a very similar argument to the 137 sanctions. I will just note that we're not hampered by the abuse of discretion standard, and I think that to have brought this appeal, for the same reasons as I've said before, it's a frivolous appeal, and I would request sanctions. Thanks, your honors. Thank you. All right. Thank you.